UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MATTHEW EVANS,

    Petitioner,                                    Case No. 18-12378

v.                                              HON. AVERN COHN

TONY TRIERWEILER,

    Respondent.
_____/

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Brian Matthew Evans (Petitioner) is a state inmate. He is serving a sentence of life without parole for first-degree felony murder, seventy five to one hundred and twenty years for armed robbery, seventy five to one hundred and twenty years for torture, forty months to five years for being a felon in possession of a firearm, and two years for felony-firearm. Petitioner filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that Petitioner's claims lack merit or are procedurally defaulted. For the reasons which follow, the petition will be denied.

**II. Procedural History**

Petitioner was convicted of the above offenses following a jury trial. The Michigan Court of Appeals affirmed his convictions. People v. Evans, No. 317577, 2014

WL 7214495 (Mich. Ct. App. Dec. 18, 2014). Petitioner then filed a pro se application for leave to appeal with the Michigan Supreme Court, which was denied. People v. Evans, 498 Mich. 913 (2015).

Petitioner filed a post-conviction motion for relief from judgment in the trial court under M.C.R. 6.500. The trial court denied the motion. People v. Evans, No. 12-003028-01-FC (Third Jud. Cir. Crim. Div. Mar. 29, 2017). The court of appeals and Michigan Supreme Court denied leave to appeal. People v. Evans, No. 338528 (Mich. Ct. App. Nov. 15, 2017); lv. den. 502 Mich. 902 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The prosecutor violated petitioner's due process rights by eliciting unfairly prejudicial testimony that petitioner was on parole at the time of the offense and defense counsel was constitutionally ineffective for failing to object.

II. The trial court reversibly erred in admitting the prior testimony of Tanganyika Felton where, (1) the prosecutor had not demonstrated that due diligence had been used to try to produce this witness at trial and thus it was not shown that this witness was unavailable; and, (2) it violated defendant's right to confrontation where preliminary examination counsel failed to impeach her credibility in violation of defendant's VI & XIV Amendment rights of the United States Constitution; and, Const. 1963, art 1, § 20.

III. The trial court reversibly erred in refusing to give a missing witness instruction where the prosecution failed to produce listed witness Tanganyika Felton to give live testimony at the trial.

IV. Trial court abused its discretion by, (1) depriving indigent defendant the constitutional dictate of Equal Protection and Due Process Clause of the Fourteenth Amendment by impeding upon access to the court records and defendant's right to effectuate an adequate review; and (2) defendant's appellate counsel's failure to provide defendant with a copy of the trial record in order to present other claims in pro per pursuant to Michigan Supreme Court Administrative Order 2004-6 was ineffective assistance.

V. Court appointed preliminary examination counsel, pretrial counsel, trial counsel, and appellate counsel were constitutionally ineffective which prejudiced petitioner's right to a fair trial and appeal.

VI. The prosecutor denied petitioner's state and federal constitutional rights to due process when the lead investigator Paul Thomas fabricated evidence to incite and procure parole officer Edward Heard Jr. to commit perjury.

VII. Trial court abused its discretion in admitting lay opinion testimony of petitioner's parole officer identifying petitioner as murder suspect shown in gas station surveillance video and still images in view of fact that petitioner could not freely examine relationship between petitioner and parole agent, subsequent to the court revealing to the jury that petitioner was on parole during the offense.

VIII. Due process entitles relief from judgment based on newly discovered withheld evidence.

### III. Facts

The material facts leading to petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the January 18, 2012, shooting death of Hussan Hussein, an attendant at a gas station in the city of Highland Park, Michigan. The gas station attendant is separated from the public behind a partitioned area. The door that allows customers entry into the store is equipped with a locking mechanism that allows the attendant to "buzz" a customer into the store from behind the partition. It was the prosecutor's theory of the case that codefendant Norwood Witherspoon entered the gas station, went to the beverage coolers, selected a juice, and deliberately broke the glass bottle. He then selected another juice, purchased it, and left the store. When Witherspoon left the store, a person identified as defendant was captured on surveillance video placing a stick in the door to prevent it from locking. The victim left the partitioned area to clean up the broken bottle when defendant entered with his face partially obscured. The victim was shot three times, twice in the legs and a fatal shot to the chest. Defendant confessed the crimes to his then-wife, Tanganyika Felton, and he gave Felton his cellular telephone, which she turned over to the police. An analysis of the cellular telephones of Witherspoon and defendant disclosed that the telephones placed calls to each other in the vicinity of the gas station at the time of the shooting. Additionally, both men were identified on the station's video surveillance recording by their respective parole officers.

People v. Evans, 2014 WL 7214495, at * 1.

## IV. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court shall not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so

4

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

## V. Petitioner's Claims

### A. Prosecutorial Misconduct/Ineffective Assistance of Counsel

In his first claim, Petitioner contends that prosecutor committed misconduct by introducing evidence that Petitioner was on parole at the time of the murder through the testimony of Petitioner's parole agent, Edward Heard. Petitioner claims that evidence of his parole status was unduly prejudicial and admitted in violation of M.R.E. 404(b)(1), which prohibits the introduction of prior bad acts evidence. Petitioner also argues that trial counsel was ineffective for failing to object to the misconduct.

The Michigan Court of Appeals rejected this claim, finding that the parole officer's testimony was relevant and admissible to establish Petitioner's identity. People v. Evans, 2014 WL 7214495, at * 2-3 (Mich. Ct. App. Dec. 18, 2014) The Michigan Court of Appeals concluded that "Heard's status as defendant's parole officer explained the nature of his relationship to defendant and his degree of familiarity with defendant, factors that were relevant to the weight and reliability of Heard's identification testimony." Id. at * 2.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004)(citing Bowling v. Parker, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo,

5

416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012)(quoting Harrington, 562 U.S. at 103).

Although F.R.E. 404(b) and its state counterpart M.R.E. 404(b) generally prohibit a prosecutor from introducing evidence of a defendant's prior bad acts, the Supreme Court has never held that the federal constitution forbids a prosecutor from doing so. Thus, the state court's rejection of Petitioner's prosecutorial misconduct claim would not entitle petitioner to habeas relief. See Wagner v. Klee, 620 F. App'x 375, 378 (6th Cir. 2015). Although Petitioner alleges prosecutorial misconduct, his claim "amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." Webb v. Mitchell, 586 F. 3d 383, 397 (6th Cir. 2009). A prosecutor does not commit misconduct by seeking to introduce relevant evidence. See Slagle v. Bagley, 457 F. 3d 501, 518 (6th Cir. 2006). The parole officer's status was relevant to his prior relationship and ability to identify Petitioner. Petitioner is not entitled to habeas relief on his claim of prosecutorial misconduct.

Petitioner also claims that counsel was ineffective for failing to object to the alleged prosecutorial misconduct. To show that he was denied the effective assistance

6

of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second, the defendant must show that such performance was prejudicial. Id. To show prejudice for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. Hinkle v. Randle, 271 F. 3d 239, 245 (6th Cir. 2001).

Here, because the Court has already determined that the prosecutor did not commit misconduct, counsel was not ineffective for failing to object. The Michigan Court of Appeals explicitly held that the references to petitioner's parole status were relevant and admissible to establish petitioner's identity. Counsel is not ineffective for failing to object to admissible evidence. See United States v. Sanders, 404 F.3d 980, 986 (6th Cir. 2005). Petitioner is not entitled to relief on his claim of ineffective assistance.

### B. Confrontation Clause

In his second claim, Petitioner contends that his Sixth Amendment right to

7

confrontation was violated by the admission of his ex-wife Tanganyika Felton's preliminary examination testimony, when she was declared unavailable as a witness at his trial. Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. See Crawford v. Washington, 541 U.S. 36 (2004). Although an exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination, this exception is inapplicable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25 (1968); See also Hamilton v. Morgan, 474 F.3d 854, 858 (6th Cir. 2007).

When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. See Pillette v. Berghuis, 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); rev'd on other grds, 408 F. App'x. 873 (6th Cir. 2010); cert. den. 132 S. Ct. 125 (2011)(citing McCandless v. Vaughn, 172 F. 3d 255, 265 (3rd Cir. 1999)).

Petitioner first says that Felton's preliminary examination testimony was inadmissible because the authorities did not use due diligence to assure her

appearance at trial. The Michigan Court of Appeals rejected this claim:

> In this case, testimony disclosed that Detective Paul Thomas obtained a witness statement from Felton on January 24, 2012 and that she appeared, pursuant to a subpoena, for defendant's preliminary examination on March 23, 2012. Detective Thomas kept in touch with Felton throughout the adjournments of the trial to ensure that he knew her current location and to keep her informed about the status of the trial. Additionally, Detective Thomas served Felton with subpoenas for the prior trial dates and, when served, Felton never indicated that she was unwilling to testify. With regard to the current trial date, Detective Thomas was able to personally serve Felton at her residence, and she in fact appeared in person on the first day of trial. Detective Thomas spoke with Felton on several occasions during trial, including on June 10, 2013 via telephone when he reached Felton and advised her to come to court as soon as possible. Felton indicated she would make preparations to come to trial, but, when Detective Thomas did not hear from her, he called her again. At that time, she expressed fear and wished to testify in disguise. After this conversation with Detective Thomas, she failed to answer her telephone and she left her residence. Detective Thomas made several telephone calls and left numerous messages on Felton's voicemail. He also went to Felton's known address multiple times and checked another address based on information he received, but he was unable to locate Felton. Although Detective Thomas reached Felton's current husband, her husband indicated that Felton was afraid, had left, and did not state where she was going.
>
> Defendant contends that due diligence was not exercised because Detective Thomas failed to check utilities, hospitals, jails, and the morgue. However, the reasonableness of Detective Thomas's efforts to locate Felton must be evaluated in light of the facts and circumstances, including the information he learned during his search. Detective Thomas had recently spoken to Felton, he had maintained steady contact with Felton throughout the proceedings, and Detective Thomas knew her residential address. Indeed, Felton had been successfully subpoenaed and she in fact appeared on the first day of trial. It is apparent that Felton chose to remove herself from available locations to avoid testifying at trial. In light of the information from Felton's husband that Felton had left because of fear, there was no reason to search hospitals, jails, and the morgue. Even defendant utilized an investigator to search for Felton, and he too was unable to locate her. In light of the record, we do not know what further efforts could have been reasonably expected from the police. The trial court did not abuse its discretion in finding that the prosecutor had exercised due diligence.

People v. Evans, 2014 WL 7214495, at * 5 (internal citation and footnote omitted).

The court of appeals' decision is reasonable. "A good-faith effort...is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." United States v. Cheung, 350 F. App'x. 19, 23 (6th Cir.2009)(internal quotation marks, citations, and alterations omitted). The lengths to which the prosecution must go to produce a witness, such that the admission of the witness' prior, confronted testimony at subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. Hardy v. Cross, 565 U.S. 65, 70 (2011)(quoting Ohio v. Roberts, 448 U.S. 56, 74 (1980)). The Supreme Court noted that "when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." Id., at 71-72. Most importantly, "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." Id. at 72.

Here, the Court agrees with the Michigan Court of Appeals that the prosecution and law enforcement made a good faith effort to bring Felton to trial based on a reasonable determination of the facts. As such, Petitioner is not entitled to relief on this ground.

Petitioner also says that Felton's preliminary examination testimony was inadmissible because his counsel's cross-examination of his ex-wife was deficient.

Petitioner is not entitled to habeas relief in the absence of any Supreme Court

precedent to support his argument that his opportunity to cross-examine Felton at his own preliminary hearing was inadequate to satisfy the requirements of the Confrontation Clause. Although there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes, the opportunity to question a witness at a preliminary examination hearing satisfies the pre-Crawford understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination. See Al–Timimi v. Jackson, 379 F. App'x 435, 437 (6th Cir. 2010).

Here, Petitioner was represented by counsel at the preliminary hearing, who was given a full opportunity to cross-examine Felton, without any restriction by the examining magistrate, and who took advantage of this opportunity to the extent that he saw fit. Accordingly, the trial court's decision to admit Felton's testimony from the preliminary examination when he was unavailable to testify was not contrary to, or an unreasonable application of clearly established federal law. As such, Petitioner is not entitled to habeas relief on this ground.

Finally, to the extent that petitioner argues that counsel's questioning of Ms. Felton at the preliminary examination was ineffective, he would not be entitled to relief. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." Dell v. Straub, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Id.

Petitioner's counsel at the preliminary examination asked Felton if she was

11

reluctant to testify at the preliminary examination and she replied that she was. Counsel asked Felton if she had been threatened by the police or prosecutor to testify. Felton answered that the authorities had threatened to hold her in custody until Petitioner's trial unless she testified at the preliminary examination. Felton actually had to leave her grandfather's funeral because she learned that there was an arrest warrant for her. Although Felton testified on direct examination that she felt threatened by Petitioner, counsel got her to admit that she was not afraid of Petitioner on the date of the preliminary examination. Felton also acknowledged, in response to counsel's questions, that she visited Petitioner in jail and had sent him several love letters. (Tr. 3/23/12, pp. 80-81). Counsel's strategic choice not to cross-examine her in greater detail was "'within the wide range of reasonable professional assistance.'" See Moss v. Hofbauer, 286 F. 3d 851, 864 (6th Cir. 2002)(quoting Strickland, 466 U.S. at 689). More importantly, Petitioner's counsel at the preliminary examination hearing did not know that Felton would fail to appear at trial. Id. Petitioner is not entitled to relief on his second claim.

### C. Missing Witness Instruction

In his third claim, Petitioner argues that the trial court erred by failing to provide a missing witness instruction with respect to Felton, which would instruct the jurors that they could infer that Felton's trial testimony would have been unfavorable to the prosecution.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question

in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977). A criminal defendant does not have a clearly established federal right to a missing witness instruction. Thus, Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce witnesses. See Stadler v. Curtin, 682 F. Supp. 2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to relief on this claim

### D. Procedural Default

Respondent contends that Petitioner's fourth through eighth claims are procedurally defaulted because he raised them for the first time on post-conviction review and failed to establish cause and prejudice, as required by M.C.R. 6.508(D)(3) for failing to raise these claims on his direct appeal.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his or her procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction

13

of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995).

The Supreme Court noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Here, the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Evans, 502 Mich. at 902. The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." People v. Evans, No. 338528. These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction

14

appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See Guilmette v. Howes, 624 F. 3d 286, 291 (6th Cir. 2010). The Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. Id.

In rejecting Petitioner's post-conviction claims, the trial court indicated several times that Petitioner failed to show cause, as required by M.C.R. 6.508(D)(3), for failing to raise the issues on his direct appeal. Because the trial court denied relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), Petitioner's remaining claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). The fact that the trial court may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. As such, Petitioner's fourth through eighth claims are procedurally defaulted.

Petitioner, however, alleges ineffective assistance of appellate counsel as cause to excuse his procedural default for failing to raise this claim on his appeal of right.[1] It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring an [ineffective assistance of counsel] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. See Guilmette, 624 F. 3d at 291. However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

15

incompetent."

Smith v. Robbins, 528 U.S. 259, 288 (2000). "[T]he hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-52).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his fourth through eighth claims. Appellate counsel filed an appellate brief containing the first three claims raised by Petitioner in his habeas petition. Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Michigan Attorney General in the answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners."

The Court recognizes that Petitioner in his eighth claim alleges that he has newly discovered evidence that four of the arresting police officers in this case were charged in federal court with accepting bribes, conspiring to distribute six kilograms of cocaine, and carrying firearms in the furtherance of a drug trafficking crime. Petitioner indicates that these charges were announced by the United States Attorney on January 25, 2013. Petitioner's trial took place between May 29, 2013 and June 11, 2013. Petitioner's direct appeal was concluded in 2015.

A habeas petitioner can show "cause" to excuse the procedural default of a claim arising under Brady v. Maryland, 373 U.S. 83 (1963), when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the

16

relevant evidence. Strickler v. Greene, 527 U.S. 263, 282 (1999).  Where "the factual basis for a claim" is "reasonably available to" the petitioner or his counsel from another source, the government is under no duty to supply that information to the defense. Strickler, 527 U.S. at 283, n. 24 (quoting Murray, 477 U.S. at 488).

Here, because the factual basis for petitioner's Brady claim was reasonably available to Petitioner or his trial counsel at the time of his trial, he is unable to establish cause to excuse the default of his claim based on the alleged suppression of this evidence.

In the end, Petitioner has not demonstrated any cause for his procedural default and it is therefore unnecessary for this Court to reach the prejudice issue. Smith v. Murray, 477 U.S. at 533.  Moreover, Petitioner has not established that a fundamental miscarriage of justice has occurred.  Although petitioner has evidence that several of the arresting officers may have been convicted of bribery, drug, or firearms charges, this evidence could only be used to impeach the officers' credibility.  Impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim or to excuse a procedural default.  See Calderon v. Thompson, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); Sawyer v. Whitley, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); Petitioner is not entitled to relief on his fourth through eighth claims.

## VI.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

S/Avern Cohn
AVERN COHN
U.S. DISTRICT JUDGE

Dated: 3/29/2019
      Detroit, Michigan